## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JULIE MARTIN, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11876-WBV-MBN** |
| **DEPARTMENT OF CHILDREN AND FAMILY SERVICES, ET AL.** | **SECTION: "D" (5)** |

### ORDER AND REASONS

Before the Court is a Motion to Dismiss, filed by defendants, The State of Louisiana through its Department of Children and Family Services, Delaunda Dykes Bordelon, Jessica Gilbert and Danielle Trosclair (collectively, "Defendants").[1]  The Motion is opposed,[2] and Defendants have filed a Reply.[3]  After considering the briefs submitted by the parties and the applicable law, for the reasons expressed below, the Court **GRANTS** the Motion to Dismiss, and remands Plaintiffs' state law claims to the Twenty-Second Judicial District Court for the Parish of St Tammany, Louisiana.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following is a summary of the facts alleged in the state court Petition for Damages, which for purposes of a Federal Rule of Civil Procedure 12(b)(6) motion, are taken as true.[4]  Jason Mitchell and his wife Julie Martin (collectively, "Plaintiffs"), allege that Mr. Mitchell was granted primary custody of his two minor children, A.M. and C.M., by an Order of Modification issued by a Texas state court in

---

[1] R. Doc. 10.
[2] R. Doc. 14.
[3] R. Doc. 19.
[4] *Doe v. State of La.*, 2 F.3d 1412, 1413 (5th Cir. 1993) (citation omitted).

November 2016, which resulted in the children residing primarily with Plaintiffs.[5] Plaintiffs assert that the children's mother, Samantha Mitchell, was emotionally and financially unable to properly care for the children, and consented to the court order giving Mr. Mitchell primary custody of the children.[6]  Plaintiffs allege that A.M. and C.M. were taken into the custody of the State of Louisiana through the Department of Children and Family Services ("DCFS") on or about September 25, 2018, after A.M. disclosed to a teacher that she had been sexually abused by Mr. Mitchell.[7]  Plaintiffs claim that the teacher's aide notified either (or both) the St. Tammany Parish Sheriff's Office and DCFS of the alleged abuse, which offices dispatched personnel to the school.[8]

Plaintiffs allege that DCFS employee, Delaunda Dykes Bordelon, and Detective Jenkins of the St. Tammany Parish Sheriff's Office interrogated A.M., concluded that she had potentially been sexually molested, and then "embarked on attempting to validate the conclusions which they had reached."[9]  According to Plaintiffs, Mr. Mitchell was notified of the allegation and "vehemently denied it."[10] Plaintiffs assert that A.M. alleged that her father molested her when her stepmother (Ms. Martin) was out of town between May 31, 2016 and June 3, 2016.[11]  Plaintiffs claim that A.M.'s accounts of the alleged abuse were "inconsistent and contradictory

---

[5] R. Doc. 1-5 at ¶ 7.
[6] *Id.*
[7] *Id.* at ¶¶ 7, 8.
[8] *Id.* at ¶ 9.
[9] *Id.* at ¶ 10.
[10] *Id.*
[11] *Id.* at ¶ 11.

throughout the investigation."[12]   Plaintiffs allege that A.M. made the allegations because she was upset with discipline imposed by Mr. Mitchell and wanted to return to her mother's care.[13]

Plaintiffs further allege that on or about October 1, 2018, Mr. Mitchell sent Bordelon screenshots of a "text exchange between A.M. and a friend of A.M.'s," which show the following:

> AM: I had to tell them something to get back to my mom
> AM: Please don't tell anyone
> Friend: wtf did you tell them
> AM: Please don't tell anyone I lied
> AM: He didn't do anything[14]

Plaintiffs claim that Bordelon conferred with Jessica Gilbert, another DCFS employee, about the text messages, but that the text messages were ultimately ignored by DCFS.[15]   Plaintiffs allege that on October 10, 2018, ten days after being provided the screenshot of the texts, DCFS held a meeting and determined that the sexual abuse allegations were valid based upon A.M.'s disclosures, which "resulted in the permanent removal of the children from the Father [sic] and Stepmother's [sic] loving home and placed them back into their Mother's [sic] custody in Texas."[16] Plaintiffs claim that Mr. Mitchell vigorously fought DCFS' findings, and appealed the decision. Plaintiffs allege that on March 12, 2019, Judge Cazeline G. Hebert reversed DCFS' determination of a valid finding of sexual abuse "because of the credible

---

[12] *Id.*
[13] *Id.* at ¶ 18
[14] *Id.* at ¶ 12.
[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 14.

testimony of the Mitchells, the inconsistent statements of A.M. and C.M., and based upon timeline [sic] of events all which point to the fact that the alleged abuse could not have happened."[17]  Although not mentioned in the Petition, Judge Hebert's Order makes no mention of the custody of the minor children.[18]

On or about June 25, 2019, Plaintiffs filed a Petition for Damages in the Twenty-Second Judicial District Court in St. Tammany Parish, Louisiana against DCFS and three DCFS employees, Bordelon, Gilbert, and Danielle Trosclair, in their individual and official capacities.[19]  Plaintiffs allege that the failure of Bordelon, Gilbert and Trosclair "to consider exculpatory materials which were available, to review and understand the same, or having understood it, failing to react thereto and therefore to return A.M. and C.M. to the Mitchell [sic] was arbitrary and capricious and constitutes intentional, malicious, willful, outrageous, reckless, flagrant misconduct, and interference with the Father's [sic] fundamental rights as a parent."[20]  Plaintiffs assert that Bordelon, Gilbert and Trosclair were inadequately trained and supervised, which "deprived the [sic] Mr. Mitchell of the most fundamental of human rights, notably the right and ability to rear and nurture his children and to enjoy their companionship and presence in his home."[21]  Plaintiffs also allege that DCFS is responsible for the actions of Gilbert, Trosclair and Bordelon

---

[17] *Id.* at ¶ 15.
[18] R. Doc. 14-6.  The Court notes that it can consider and take judicial notice of matters that are of public record, including pleadings that have been filed in state court, without converting Defendants' Motion to Dismiss into a motion for summary judgment.  *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.,* 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).
[19] R. Doc. 1-5.
[20] *Id.* at ¶ 20.
[21] *Id.* at ¶ 21.

under the doctrine of *respondeat superior*.[22]   Plaintiffs assert that the foregoing actions of Defendants "constitute a deprivation of the Petitioners' Civil Rights under color of state law, and as such are actionable under 42 U.S.C. § 1983."[23]   Defendants seek damages, including punitive damages, and attorney's fees for, among other things, emotional distress, pain and suffering, loss of reputation, loss of privacy interest and embarrassment.[24]

Bordelon, Gilbert, and the Louisiana Attorney General removed the matter to this Court on July 25, 2019, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1331.[25]   The removing defendants asserted that Plaintiffs' Petition alleges a violation of federal law, namely 42 U.S.C. § 1983.   Plaintiffs filed a Motion to Remand on August 23, 2019, asserting that the case should be remanded because the Notice of Removal was procedurally defective for lack of unanimity under 28 U.S.C. §§ 1441(c)(1) and (c)(2), and because DCFS did not join in the removal and did not clearly and expressly waive its Eleventh Amendment immunity.[26]   Finding no procedural defects in the removal and agreeing with the removing defendants that the State of Louisiana had waived its Eleventh Amendment immunity from suit in this case, the Court denied the Motion to Remand on March 18, 2020.[27]

---

[22] *Id.* at ¶¶ 4-6.

[23] *Id.* at ¶ 24.

[24] *Id.* at ¶¶ 24-25.

[25] R. Doc. 1.   In the Certificate of Compliance filed by DCFS, Bordelon and Gilbert pursuant to 28 U.S.C. § 1447(b), the removing defendants assert that the only return of service of citation contained in the state court record as of August 6, 2019 is a return of no service for Trosclair.  R. Doc. 4; *See*, R. Doc. 4-5.

[26] R. Doc. 1.

[27] R. Doc. 34.

Defendants filed the instant Motion to Dismiss on October 1, 2019, asserting that this case should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim under 42 U.S.C. § 1983 because Plaintiffs have failed to allege a violation of a recognized constitutional right.[28]   Defendants also assert that the case should be dismissed because the State of Louisiana and its employees sued in their official capacities are not "persons" subject to liability under § 1983, and because the Petition fails to allege sufficient facts to overcome Defendants' qualified immunity from suit.[29] Defendants claim that it is clear from Plaintiffs' allegations that they believe their constitutional rights were violated because DCFS investigators did not give the alleged exculpatory evidence (the text messages) the interpretation, weight or belief that the accused wanted.[30]   Defendants argue that there is no constitutional requirement that state investigators interpret, weigh, believe, or investigate allegedly exculpatory evidence provided by the accused in the same manner or as the accused desires.[31]   Defendants also assert that there is no constitutional requirement that State investigators perform any tests to validate allegedly exculpatory evidence.[32]   Defendants argue Plaintiffs have failed to state a claim under § 1983 because Plaintiffs failed to allege a violation of a constitutional right, much less that the constitutional right was clearly established at the time of the alleged violation.[33]

---

[28] R. Doc. 10.
[29] *Id.*
[30] R. Doc. 10-2 at pp. 2-3.
[31] *Id.* (citations omitted).
[32] *Id.* (citation omitted).
[33] *Id.* at p. 8.

Defendants also claim that Plaintiffs received "all the due process that they were entitled too [sic] at the father's administrative appeal hearing."[34]

Defendants further assert that Plaintiffs' claims against DCFS and its employees in their official capacities must be dismissed because the Supreme Court has held that litigants may not file § 1983 claims against a state or state officials in their official capacities.[35] With respect to the § 1983 claims against Bordelon, Gilbert and Trosclair in their individual capacities, Defendants argue that they are entitled to qualified immunity and that Plaintiffs have failed to overcome qualified immunity by establishing a violation of a clearly established constitutional right.[36] Defendants claim that heightened pleading is needed in qualified immunity cases,[37] and that Plaintiffs have failed to allege specific facts to establish the required causal link between Defendants' actions and the deprivation of a constitutionally protected interest.[38] Defendants argue that Plaintiffs' allegations regarding Defendants' failure to consider the alleged exculpatory evidence and Defendants' failure to follow DCFS policies are insufficient to allege a constitutional violation.[39] Defendants further argue that Plaintiffs cannot show the violation of a clearly established constitutional right because "the amorphous due process right to family integrity is

---

[34] *Id*. at p. 7.
[35] *Id*. at p. 4 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989)).
[36] R. Doc. 10-2 at pp. 7-8 (citing *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999)).
[37] R. Doc. 10-2 at p. 8 (quoting *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)) (internal quotation marks omitted).
[38] R. Doc. 10-2 at p. 9 (citing *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995)).
[39] R. Doc. 10-2 at p. 13.

so nebulous its contours have yet to be well-defined."[40]  Defendants assert that the Fifth Circuit has consistently held that child abuse caseworkers who allegedly violated the right to family integrity for failure to conduct a "correct" investigation are entitled to qualified immunity.[41]  Defendants further assert that there has been, and continues to be, insufficient guidance from the Fifth Circuit to clearly indicate to Defendants that they had a constitutional duty to investigate the alleged exculpatory evidence any more than they did.[42]  As such, Defendants maintain that they are entitled to qualified immunity from Plaintiffs' suit, which should be dismissed immediately.

Plaintiffs assert that the Motion to Dismiss should be denied because their Petition alleges a violation of their "clearly established right to care, custody and control" of their children, which is a fundamental liberty interest of which they were deprived without due process.[43]  Plaintiffs assert that Defendants' decision to remove the children was done without a court order or court intervention, which is contrary to the law and to clearly established policies and customs.[44]  Plaintiffs further allege, for the first time, that these actions violated their First Amendment right to familial association, their Fourth Amendment right to be free from illegal seizures and their Fourteenth Amendment right to due process.[45]  Plaintiffs assert that there was no

---

[40] *Id.* (citing *Kiser v. Garrett*, 67 F.3d 1166, 1173 (5th Cir. 1995)).

[41] R. Doc. 10-2 at p. 13 (citing *Roe v. Tex. Dept. of Protective & Regulatory Services*, 299 F.3d 395 (5th Cir. 2002); *Kiser*, 67 F.3d 1166; *Mayronne v. Vaught*, 843 F. Supp. 1096 (E.D. La. Feb. 23, 1994); *Doe v. State of La.*, 2 F.3d 1412 (5th Cir. 1993); *Stem v. Ahearn*, 908 F.2d 1 (5th Cir. 1990); *Hodorowski v. Ray*, 844 F.2d 1210 (5th Cir. 1988)).

[42] R. Doc. 10-2 at pp. 13-14.

[43] R. Doc. 14 at pp. 7-8.

[44] *Id.* at p. 8.

[45] *Id.* at p. 7.

due process to overturn the change in custody that resulted from the removal of the children, and that the removal resulted in an unreasonable seizure of the children.[46]

Plaintiffs also assert that Defendants are not entitled to qualified immunity because their actions violated Plaintiffs' due process rights, which were clearly established at the time of the violation.[47] Plaintiffs assert that Defendants' failure to obtain a temporary restraining order, a protective order, or an instanter order prior to the removal constitutes a violation of Articles 617-620 of the Louisiana Children's Code and DCFS Policy 4-710.[48] Plaintiffs maintain that the removal of the children without court intervention constitutes an arbitrary and capricious deprivation of Plaintiffs' due process rights.[49] Plaintiffs further assert that these due process rights were clearly established at the time of the violation because the Supreme Court has consistently held that parents have a fundamental liberty interest in the care, custody and management of their child.[50] Plaintiffs also cite a recent opinion from the Fifth Circuit, wherein the court confirmed that the Due Process Clause provides parents with substantive and procedural protection from interference with their liberty interest in the care, custody and management of their children.[51] Plaintiffs assert that, as of the date of their Opposition brief (November 8, 2019), the children

---

[46] *Id.* at pp. 8-9.
[47] *Id.* at pp. 9-24.
[48] R. Doc. 14 at pp. 11-13.
[49] *Id.* at pp. 13 & 15.
[50] *Id.* at p. 25 (citing *Troxel v. Granville*, 530 U.S. 57, 64-66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Meyer v. Nebraska*, 262 U.S. 390, 399, 262 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 534-35, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Stanley v. Illinois¸* 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).
[51] R. Doc. 14 at pp. 16-17 (citing *Romero v. Brown*, 937 F.3d 514 (5th Cir. 2019)).

had not been returned to their custody, which is an egregious violation of the right to family integrity.[52]

Plaintiffs further assert that the Fifth Circuit has held that the Fourth Amendment regulates social workers' civil investigations, and that the government cannot seize a child from his or her parents absent a court order, parental consent or exigent circumstances.[53]   Plaintiffs aver that no exigent circumstances warranted the removal of their children and that the children were not in imminent danger because the claim of abuse was not frequent and had allegedly occurred more than two years prior.[54]   Plaintiffs argue that, "the one allegation of stale abuse which was recanted prior to the children being placed with S.M. further bolsters the fact that the children were not in imminent danger."[55]   Plaintiffs claim that DCFS also violated their Fourth Amendment rights by improperly seizing the children without a court order.[56] Additionally, Plaintiffs assert that, "the State interfered with the plaintiffs' First Amendment rights," including the "right to familial association which has not been corrected to date."[57]   Plaintiffs also seem to argue that DCFS is not entitled to qualified immunity because it is liable for the actions of Bordelon, Gilbert, and Troslair under *respondeat superior*.[58]

---

[52] R. Doc. 14 at p. 17.
[53] *Id*. (citing *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 420, 429 (5th Cir. 2008)).
[54] R. Doc. 14 at pp.17-18.
[55] *Id*. at p. 18.
[56] *Id*. at p. 19 (citations omitted).
[57] *Id*. at p. 20.
[58] *Id*. at pp. 20-21.

Finally, if the Court finds that Plaintiffs' Petition fails to state a claim against Defendants, Plaintiffs seek leave to amend their Petition to address the deficiencies.[59] Plaintiffs note that Defendants incorrectly stated that Plaintiffs have only brought a § 1983 claim, and assert that they have alleged state law claims, including "general tort claims."[60]   Thus, if the Court does not grant Plaintiffs leave to amend their Petition, Plaintiffs assert that the Court should remand the remaining state law claims.

In response, Defendants assert that Plaintiffs' Petition only alleges that Defendants conducted an improper or incomplete investigation by not acting on the purported exculpatory evidence, and that the Opposition brief is the first mention of an alleged improper removal of the children.[61]   As such, Defendants assert that a claim for constitutionally improper seizure of the children and any state law claims have not been adequately alleged in the Petition and are insufficient to defeat Defendants' qualified immunity.  Defendants assert that Plaintiffs did not assert any state law causes of action in their Petition because if they had, Defendants would have asserted the state law immunities to such causes of action under Articles 514, 526 and 611 of the Louisiana Children's Code, which, like qualified immunity, direct dismissal of Plaintiffs' case.[62]   Defendants maintain that Plaintiffs have failed to cite any legal authority to establish that they have a constitutional right to an investigation or interpretation of the exculpatory evidence as they desire, or that the

---

[59] *Id.* at p. 24.
[60] *Id.*
[61] R. Doc. 19 at p. 1.
[62] *Id.* at pp. 3-4.

right was clearly established at the time of the alleged violation by the DCFS workers. Defendants assert that the improper removal claim should be ignored because it was not pled in the Petition and because the children were never taken into state custody.

Defendants further deny that the children were ever seized or removed into the State's custody because they stayed with a family friend until their mother arrived within 24 hours of the initial interview by Bordelon.[63]  As such, Defendants argue that none of the alleged codes or policies that Plaintiffs claim required a hearing for removal were ever triggered.  Defendants point out that Plaintiffs fail to cite any Fifth Circuit or Louisiana authority requiring a due process hearing when the children are left with a different custodial parent.[64]  Defendants maintain that they are entitled to qualified immunity because no clear Fifth Circuit authority establishes that a court order or hearing is required before a child protection officer leaves a child in the care of a different custodial parent.  Defendants further note that the hearing transcript attached to Plaintiffs' Opposition brief shows that A.M. denied sending the alleged exculpatory texts, asserted that her father had overtaken her social media account to make and send the texts, and further that Mr. Mitchell does not believe it would be in the best interest of his children to be back in his custody.[65] Defendants assert that these admissions call into question the validity of this lawsuit and the possible need for a Rule 11 motion, and support their request for dismissal without granting Plaintiffs leave to amend their Petition.[66]

---

[63] *Id*. at p. 2 (*citing* R. Docs. 14-4, 14-2 at p. 14, and 14-1 at pp. 108-109).
[64] R. Doc. 19 at pp. 2-3, 4.
[65] R. Doc. 19 at p. 3 (*citing* R. Doc. 14-1 at pp. 180-181, 119 & 164).
[66] R. Doc. 19 at p. 3.

## II.   LAW AND ANALYSIS

### A.  Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[67]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[68]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[69]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[70]

A court must accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.[71]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.[72] "Dismissal is appropriate when the complaint on its face shows a bar to relief."[73]  The Fifth Circuit has held that a motion to dismiss under Rule 12(b)(6) is generally

---

[67] Fed. R. Civ. P. 12(b)(6).
[68] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[69] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678, 129 S.Ct. at 1949) (quotation marks omitted).
[70] *Iqbal*, 556 U.S. at 679, 129 S.Ct. at 1949 (quotation omitted).
[71] *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).
[72] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[73] *Cutrer v. McMillan*, 308 Fed.Appx. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).

disfavored and is rarely granted.[74]  In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[75]  The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[76]

### B.  42 U.S.C. § 1983 Claims

Title 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.[77]

Section 1983 does not create any substantive rights; it provides a remedy for the violation of federal constitutional or statutory rights under color of state law.[78]  "An underlying constitutional or statutory violation is a predicate to liability under § 1983."[79]  To establish § 1983 liability, the plaintiff must establish the following three elements: (1) deprivation of a right secured by the United States Constitution or

---

[74] *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)); *Manguno v. Prudential Property and Casualty Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002).

[75] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).

[76] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004).

[77] 42 U.S.C. § 1983.

[78] *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quotation omitted); *Hernandez ex rel. Hernandez v. Texas Dept. of Protective & Regulatory Servs.*, 380 F.3d 872, 879-80 (5th Cir. 2004) (citation omitted).

[79] *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citation omitted).

federal law; (2) that occurred under color of state law; and (3) was caused by a state actor.[80]

### C.  Qualified Immunity and 42 U.S.C. § 1983 Claims

Government officials may invoke qualified immunity as a defense to § 1983 claims, which "shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[81]  The Supreme Court has made clear that qualified immunity functions as an immunity from suit, rather than a mere defense to liability.[82]  "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"[83] "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity."[84]  Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[85]

---

[80] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

[81] *Mabry v. Lee County*, 100 F.Supp.3d 568, 572 (N.D. Miss. 2015) (quoting *Luna v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014), *cert. granted, decision rev'd on other grounds*, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015)).

[82] *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)) (internal quotation marks omitted).

[83] *Brumfield v. Hollins*, 551 F.3d 322, 326-27 (5th Cir. 2008) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)).

[84] *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001)) (internal quotation marks omitted).

[85] *Pearson v. Callahan*, 555 U.S. at 231, 129 S.Ct. 808.

Once the government official asserts the defense of qualified immunity, the burden shifts to the plaintiff to negate the defense.[86] To overcome a claim of qualified immunity, a plaintiff must demonstrate: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[87] It is up to the district court's sound discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.[88]

## III.   ANALYSIS

### A. Plaintiffs' Petition states a plausible claim under 42 U.S.C. § 1983.

Contrary to Defendants' assertions, the Court finds that Plaintiffs' Petition alleges a plausible violation of a constitutional right to support their 42 U.S.C. § 1983 claim. In the Petition, Plaintiffs allege the following:

> 20.
> The failure of Delaunda Dykes Bordelon, Jessica Gilbert, and Danielle Trosclair to consider exculpatory materials which were available, to review and understand the same, or having understood it, failing to react thereto and therefore to return A.M. and C.M. to the Mitchell [sic] was arbitrary and capricious and constitutes intentional, malicious, willful, outrageous, reckless, flagrant misconduct, and interference with the Father's [sic] fundamental rights as a parent.

> 21.
> Petitioners are informed and believe, and on such information and belief aver, that the workers assigned to this matter by D.C.F.S. were inadequately trained and supervised and as a result of such inadequate training and supervision and the lack of knowledge occasioned thereby, deprived the Mr. [sic] Mitchell of the most fundamental of human rights, notably the right and ability to rear and nurture his children and to

---

[86] *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).
[87] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).
[88] *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818.

enjoy their companionship and presence in his home.  The employees of D.C.F.S. also did not follow department guidelines with respect to the handling of the investigation.[89]

Although not a model of clarity, Plaintiffs' chief complaint seems to be the manner of the investigation conducted by DCFS into the sexual abuse allegations.  Plaintiffs appear to allege that Defendants' failure to consider the purported exculpatory text messages and/or Defendants' failure to react to the text messages by returning the children to Mr. Mitchell violated his substantive due process liberty interest in the right to the care, custody and control of his minor children.

"The Supreme Court has held that parents have a 'fundamental liberty interest . . . in the care, custody, and management of their child . . . .'"[90]  According to the Fifth Circuit, "That the Constitution protects family relationships and a parent's right to the care, custody, control, and management of their children is well-established."[91]  More recently, the Fifth Circuit reaffirmed that, "The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious than property rights."[92]  The Fifth Circuit further explained, "Indeed, a parents' right to 'care, custody, and control of their children' is 'perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court.'"[93]

---

[89] R. Doc. 1-5 at ¶¶ 20 & 21.

[90] *Gates v. Texas Dept. of Protective and Regulatory Services*, 537 F.3d 404, 434 (5th Cir. 2008) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

[91] *Wooley v. City of Baton Rouge*, 211 F.3d 913, 920-21 (5th Cir. 2000) (citations omitted).

[92] *Romero v. Brown*, 937 F.3d 514, 520 (5th Cir. 2019) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)) (internal quotation marks omitted).

[93] *Romero*, 937 F.3d at 520 (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)).

Based upon the foregoing authority, and viewing the allegations in the light most favorable to Plaintiffs, as the Court is bound to do, the Court finds that Plaintiffs' Petition plausibly alleges a violation of Mr. Mitchell's substantive due process right to the care, custody and control of his children.  The Court notes that Defendants vigorously argue that, "there is no constitutional requirement that State investigators interpret, weigh, believe, or investigate allegedly exculpatory evidence provided by the accused in the same manner as the accused desires."[94]  This argument is misplaced and ignores Plaintiffs' assertion that Defendants violated Mr. Mitchell's fundamental right as a parent to the care, custody and control of his children by not returning them to his care after reviewing the purportedly exculpatory text messages.  Additionally, the Fifth Circuit has recognized a substantive due process right to family integrity under similar circumstances, where a parent alleged that social workers violated his right to family integrity by continuing their investigation of possible child abuse after receiving exculpatory evidence exonerating the parent.[95]

Accepting the well-pleaded facts in the Petition as true, the Court finds the Petition plausibly asserts a violation of Mr. Mitchell's constitutional right to the care, custody and control of his children by Defendants.  Based upon the foregoing legal authority, and because motions to dismiss under Rule 12(b)(6) are generally disfavored and are rarely granted, the Court denies Defendants' Motion to Dismiss

---

[94] R. Doc. 10-2 at pp. 2-3, 5-7 (citations omitted).
[95] *Kiser v.* Garrett, 67 F.3d 1166 (5th Cir. 1995).  Although the Fifth Circuit in *Kiser* ultimately concluded that the appellees were entitled to qualified immunity because the right to family integrity was not clearly established at the time of the alleged violation (*Id*. at 1173), facial plausibility of a § 1983 claim under Fed. R. Civ. P. 12(b)(6), which is at issue in this case, is a much lower standard to satisfy.

to the extent Defendants assert that Plaintiffs' Petition fails to state a cause of action because it fails to allege a violation of a recognized constitutional right to support their 42 U.S.C. § 1983 claim.

The Court notes that in their Opposition brief, Plaintiffs attempt to enlarge the allegations contained in their Petition by alleging, for the first time, that Defendants' actions violated their Fourteenth Amendment rights to due process, their Fourth Amendment right to be free from illegal seizure and their First Amendment right to familial association.[96]   Plaintiffs assert that they received no due process before the children were removed from their custody and that the removal constitutes an unreasonable seizure of the children because they were removed from Mr. Mitchell's custody without a court order or subsequent review of DCFS' decision to remove the children from his custody.[97]   Even accepting all well-pleaded facts in the Petition as true and viewing them in the light most favorable to Plaintiffs, the Court finds that the Petition does not allege violations of Plaintiffs' rights under the First or Fourth Amendments, nor does it allege due process violations under the Fourteenth Amendment.   Instead, the Petition contains allegations that Gilbert, Trosclair and Bordelon violated Mr. Mitchell's substantive due process right to the care, custody and control of his minor children by failing to review and/or react to the alleged exculpatory text messages provided by Mr. Mitchell by returning the children to his custody.  Plaintiffs offer no explanation for why they did not plead these alleged constitutional violations in their Petition, especially where the claims stem from the

---

[96] R. Doc. 14 at p. 7.
[97] Id. at pp. 8-9.

same underlying facts contained in the Petition, namely DCFS' decision to remove the minor children from Mr. Mitchell's custody pending an investigation into allegations of sexual abuse and placing the children in their mother's custody. The Court must, therefore, limit its review to the allegations contained in the Petition. In doing so, the Court finds only a plausible claim for the violation of Mr. Mitchell's substantive due process right to family integrity.

**B. Plaintiffs' 42 U.S.C. § 1983 claims against DCFS and Gilbert, Bordelon and Trosclair in their official capacity as DCFS employees must be dismissed because they are not "persons" under § 1983.**

Although Plaintiffs have plausibly alleged a constitutional violation in their Petition, that is not the end of the inquiry.   In addition to alleging that Bordelon, Gilbert and Trosclair violated Mr. Mitchell's substantive due process right to the care, custody and control of his children, Plaintiffs allege that DCFS is responsible for their actions under the doctrine of *respondeat superior*.[98]  Plaintiffs also allege that DCFS inadequately trained and supervised Bordelon, Gilbert and Trosclair, which resulted in the deprivation of Mr. Mitchell's fundamental rights as a parent to rear and nurture his children.[99] Defendants assert that Plaintiffs' § 1983 claims against DCFS and Gilbert, Bordelon and Trosclair in their official capacity as DCFS employees must be dismissed because the Supreme Court has held that "a State is not a person within the meaning of § 1983."[100]   Plaintiffs fail to address Defendants' argument in their

---

[98] R. Doc. 1-5 at ¶¶ 4-6.
[99] *Id*. at ¶ 21.
[100] R. Doc. 10-2 at pp. 4-5 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989)).

Opposition brief, focusing their arguments instead on the issue of qualified immunity.[101]

"It is well settled that, '[t]he Eleventh Amendment to the United States Constitution bars suits in federal court by citizens of a state against their own state or a state agency or department.'"[102]  However, it is also "an established principle of law that generally a state defendant waives sovereign immunity under the Eleventh Amendment when it removes a case from state to federal court."[103]  Although not mentioned by Defendants in their briefing, the Court previously denied Plaintiffs' Motion to Remand based, in part, on the Court's finding that removal was not defective for lack of the State's waiver of Eleventh Amendment immunity.[104]  In reaching that conclusion, the Court agreed with Defendants that when Bordelon and Gilbert removed the case to federal court in their official capacities as DCFS employees, it constituted a valid waiver of the State of Louisiana's Eleventh Amendment immunity from suit in federal court.[105]  Thus, Defendants' removal of this suit to federal court constituted a waiver of the State of Louisiana's sovereign immunity.[106]

---

[101] R. Doc. 14 at pp. 9-11.
[102] *Lexing v. Edwards*, Civ. A. No. 17-1092, 2018 WL 2350650, at *8 (W.D. La. Apr. 30, 2018), *report and recommendation adopted by* 2018 WL 2347093 (W.D. La. May 23, 2018), *aff'd*, 747 Fed.Appx. 267 (5th Cir. 2019) (quoting *Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987)).
[103] *Price v. Louisiana*, Civ. A. No. 16-402-BAJ-EWD, 2017 WL 151394, at *2 (M.D. La. Jan. 13, 2017) (citing *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) (citing *Lapides v. Bd. of Regents of University System of Georgia*, 535 U.S. 613, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002))).
[104] R. Doc. 34.
[105] *Id*. at p. 9.
[106] *Williams v. Louisiana*, Civ. A. No. 17-453-JWD-EWD, 2019 WL 1003645, at *4 (M.D. La. Feb. 28, 2019).

Nonetheless, the Fifth Circuit has held, "that waiver does not affect or limit the State's ability to assert whatever rights, immunities or defenses are provided for by its own sovereign immunity law to defeat the claims against the State finally and on their merits in the federal courts."[107]  Thus, as explained by our sister court, "Louisiana's removal to federal court waived its immunity *from suit* in regards to the official capacity § 1983 claims, but the State may still prove that it has immunity *from liability* on these claims."[108]  As previously mentioned, "Section 1983 provides a private right of action for damages to individuals who are deprived of 'any rights, privileges, or immunities' protected by the Constitution or federal law by any 'person' acting under the color of state law."[109]  According to the Fifth Circuit, "The Supreme Court has held that a State is not a person against whom a § 1983 claim for money damages might be asserted."[110]  Further, "This rule extends to 'arms of the state,' and to a state's 'officials acting in their official capacities.'"[111]

Here, Plaintiffs have alleged a § 1983 claim for money damages against DCFS and three of its employees in their official capacities.  DCFS is an arm of the state.[112]

[107] *Meyers ex rel. Benzing v. Texas*, 454 F.3d 503, 504 (5th Cir. 2006).
[108] *Williams*, Civ. A. No. 17-453-JWD-EWD, 2019 WL 1003645 at *4 (emphasis in original).
[109] *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007) (*quoting* 42 U.S.C. § 1983).
[110] *Med RX/Systems, P.L.L.C. v. Texas Dept. of State Health Servs.*, 633 Fed.Appx. 607, 610 (5th Cir. 2016) (quoting *Lapides v. Bd. of Regents of University System of Georgia*, 535 U.S. 613, 617, 122 S.Ct. 1640, 152 L.Ed.2d 806 (2002)) (internal quotation marks omitted).
[111] *Med RX/Systems, P.L.L.C.*, 633 Fed.Appx. at 610 (quoting *Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).
[112] *See, Lexing v. Edwards*, Civ. A. No. 17-1092, 2018 WL 2350650, at *8 (W.D. La. Apr. 30, 2018) (citing *Cummings v. Louisiana Dept. Children & Family Servs.*, Civ. A. No. 14-3362, 2015 WL 5015311, at *1 n.2 (W.D. La. Aug. 21, 2015) (and cases cited therein)); *See, Schannette v. Doxey*, Civ. A. No. 2:12-CV-01416, 2013 WL 4516041, at *4 (W.D. La. Aug. 22, 2013) (citing *Harmony Center, LLC v. Jindal*, Civ. A. No. 10-621, 2010 WL 4955167, at *3 (M.D. La. Nov. 30, 2010)).

Thus, to the extent Plaintiffs' Petition asserts a claim under 42 U.S.C. § 1983 against DCFS and against Gilbert, Trosclair and Bordelon in their official capacity, the claims must be dismissed because Defendants are not considered "persons" within the meaning of § 1983.[113]

### C. Plaintiffs' § 1983 claim against Gilbert, Bordelon and Trosclair in their personal capacity must be dismissed because they are entitled to qualified immunity.

#### 1. Gilbert, Bordelon and Trosclair are entitled to qualified immunity.

To the extent that Plaintiffs attempt to assert a § 1983 claim against Gilbert, Bordelon and Trosclair in their individual capacity, the Court finds that they are entitled to qualified immunity.  The Fifth Circuit has repeatedly held that child care workers are entitled to qualified immunity in the performance of discretionary, nonprosecutorial functions.[114]   Thus, to hold Gilbert, Bordelon and Trosclair personally liable, Plaintiffs "must pierce the qualified immunity that they inherently enjoy by demonstrating that the workers breached 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"[115]   "In determining whether a clearly established constitutional right was violated, the

---

[113] *See Williams*, Civ. A. No. 17-453-JWD-EWD, 2019 WL 1003645, at *4; *Price v. Louisiana*, Civ. A. No. 16-402-BAJ-EWD, 2017 WL 151394, at *2 (M.D. La. Jan. 13, 2017).

[114] *Doe v. State of La.*, 2 F.3d 1412, 1416 (5th Cir. 1993) (citing *Stem v. Ahearn*, 908 F.2d 1, 5 (5th Cir. 1990); *Hodorowski v. Ray*, 844 F.2d 1210, 1216 (5th Cir. 1988); *Austin v. Borel*, 830 F.2d 1356, 1363 (5th Cir. 1987)).  *See, Darian v. Cashe*, Civ. A. No. 17-52-JJB-EWD, 2017 WL 3326976, at *12 (M.D. La. July 14, 2017) ("[S]tate child care workers such as the DCFS defendants are entitled to qualified immunity in the performance of discretionary, non-prosecutorial functions.") (quoting *Schannette v. Doxey*, Civ. A. No. 2:12-CV-01416, 2013 WL 4516041 at *6 (W.D. La. Aug. 22, 2013)) (internal quotation marks omitted).

[115] *Stem*, 908 F.2d at 5 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)).

Supreme Court has instructed courts to focus on the law existing at the time of the alleged violation."[116]

As previously discussed, the Petition appears to allege that Bordelon, Gilbert and Trosclair, acting in their official and individual capacities, violated Mr. Mitchell's substantive due process liberty interest in the right to the care, custody and control of his minor children by failing to consider purported exculpatory evidence and failing to return the children to Mr. Mitchell's custody. In a trilogy of cases, the Fifth Circuit has held that social workers are entitled to qualified immunity for actions taken during the course of investigating allegations of child abuse for periods of time ranging from one weekend to four months.[117] Here, the minor children were removed from Mr. Mitchell's custody and placed into the custody of their biological mother, Samantha Mitchell, due to an ongoing investigation into sexual abuse allegations. The parties agree that the children were immediately placed in the care of a family friend until their mother arrived in Louisiana two days later.[118] Mr. Mitchell thereafter provided the alleged exculpatory text messages to Defendants on or about October 1, 2018, while the investigation was ongoing and prior to DCFS determining

---

[116] *Darian*, Civ. A. No. 17-52-JJB-EWD, 2017 WL 3326976, at *12; *See, Doe.*, 2 F.3d at 1416) (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)).

[117] *Morris v. Dearborne*, 181 F.3d 657, 669 (5th Cir. 1999) (footnote omitted); *See, Kiser v. Garrett*, 67 F.3d 1166, 1173 (5th Cir. 1995) ("[A]lthough a substantive due process right to family integrity has been recognized, the contours of that right are not well-defined, and continue to be nebulous, especially in the context of a state's taking temporary custody of a child during an investigation of possible parental abuse."); *Doe*, 2 F.3d at 1416-18 (rejecting plaintiff's argument that the defendants had violated his substantive due process liberty interest in the right to the care and custody of his children because the right was not clearly established at the time of defendants' actions); *Hodorowski*, 844 F.2d at 1217 (concluding that the right to family integrity was too "nebulous" for the social worker defendants to have known that an attempt to obtain temporary custody of the children during an abuse investigation was a violation of a clearly established constitutional right).

[118] R. Doc. 14 at p. 5; R. Doc. 19 at p. 2.

that the sexual abuse allegations were valid on October 10, 2018.[119]   Although a Louisiana judge subsequently reversed DCFS' determination approximately six months later, it is clear to the Court that the Defendants' actions of which Plaintiffs complain were taken during the course of investigating allegations of child abuse and concern only a temporary removal of the children from Mr. Mitchell's custody. Accordingly, Gilbert, Trosclair and Bordelon are entitled to qualified immunity from Plaintiffs' § 1983 claim.

### 2.  Plaintiffs have failed to meet their burden of proving the violation of a clearly established constitutional right.

This Court has previously explained that, "In the context of a motion to dismiss, a district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity."[120]   To overcome the claim of qualified immunity, Plaintiffs must demonstrate that Defendants violated a statutory or constitutional right and that the right was clearly established at the time of the alleged violation.[121]   The Court has already determined that Plaintiffs have plausibly alleged a violation of Mr. Mitchell's substantive due process right to the care, custody and control of his minor children.  However, the Court finds that Plaintiffs have failed to show that constitutional right was clearly established at the time of the alleged violation in September 2018.

---

[119] R. Doc. 1-5 at ¶¶ 12-13.
[120] *Heintz v. Lawson*, Civ. A. No. 18-366, 2019 WL 127057, at *5 (E.D. La. Jan. 7, 2019) (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)) (internal quotation marks omitted).
[121] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011) (citation omitted).

Plaintiffs cite the Fifth Circuit's 2019 decision in *Romero v. Brown*[122] to support their argument that Defendants violated Plaintiffs' procedural due process rights by removing the minor children from Mr. Mitchell's custody.[123]  However, the Court has already determined that Plaintiffs did not plausibly allege a Fourteenth Amendment procedural due process violation in their Petition.  Plaintiffs also cite *Romero* to support their argument that the "lengthier removal[]" of the minor children in this case, from September 2018 to the date of the Opposition brief (November 8, 2019), shows a violation of a clearly established right because it reflects "an egregious violation of the right of family integrity."[124]  The Court disagrees, and finds that *Romero* supports Defendants' position that they are entitled to qualified immunity to Plaintiffs' substantive due process claim.

In *Romero*, the Plaintiffs' children were seized from their home by a social worker and other officials and placed in foster homes without a court order based upon allegations of spousal abuse.[125]  The following day, a state court judge found no justification for the removal and ordered the immediate return of the children to both parents.[126]  Plaintiffs filed suit alleging that the social workers, police officers, and the city violated their Fourteenth Amendment due process rights.[127]  The district court granted the defendants' motion to dismiss, finding that a violation of the right to family integrity was not clearly established in the context of a social worker

---

[122] 937 F.3d 514 (5th Cir. 2019).
[123] R. Doc. 14 at pp. 16-17.
[124] *Id*. at p. 17.
[125] 937 F.3d at 517.
[126] *Id*. at 517-18.
[127] *Id*. at 519.

investigation, entitling the social workers to qualified immunity, and found no authority to support the claim against the police officers.[128]  The district court also dismissed all claims against the city for failure to sufficiently allege municipal liability under § 1983.[129]

The Fifth Circuit affirmed the district court's findings, concluding that the social workers were entitled to qualified immunity to a substantive due process claim because there was an ongoing investigation into domestic violence and the removal of the children lasted only 24 hours.[130]  The Fifth Circuit explained that, "[I]n a substantive due process analysis, '[t]he right to family integrity must be balanced against the state's interest in protecting the health, safety, and welfare of children.'"[131]  The court noted that, "A balancing test is difficult terrain for a party having to prove a clear violation of the law."[132]  The *Romero* court further explained that, "We analyze whether a claim alleges a clearly established violation of the right to familial association by 'placing [the claim], on a case by case basis, along a continuum between the state's clear interest in protecting children and a family's clear interest in privacy.'"[133]  "If the facts of the case 'place it in the center of the continuum,' meaning the state's and family's interests overlap, the right to family integrity is considered too 'nebulous' to find a clearly established violation."[134]  "If, on

---

[128] *Id.*
[129] *Id.*
[130] *Id.* at 518, 521.
[131] *Id.* at 520 (quoting *Wooley v. Baton Rouge*, 211 F.3d 913, 924 (5th Cir. 2000)).
[132] *Romero*, 937 F.3d at 520 (citing *Morris*, 181 F.3d at 671; *Hodorowski*, 844 F.3d at 1217 (recognizing the "unsuitability of such a general right [to family integrity] to fix liability in particularized circumstances.")).
[133] *Romero*, 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671) (internal quotation marks omitted).
[134] 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671).

the other hand, the case is 'squarely on the end of the continuum where the state's interest is negligible and where the family privacy right is well developed in jurisprudence from this circuit and the Supreme Court,' qualified immunity is not a defense."[135]

The *Romero* court held that, "Defeating immunity for a family integrity claim thus 'hinges, in large part, upon the degree of fit between the facts of this case' and our prior opinions."[136]  The court concluded that two features of the case–the pending investigation into domestic violence and a removal lasting only one day– distinguished the case from prior child removal cases in which the court found a substantive due process violation.[137]  In doing so, the court explained that:

> Because the substantive due process inquiry becomes a clash of two vital interests when the state removes a child as part of a domestic violence investigation, it is not surprising that we have never found a clearly established violation of the right to family integrity in that context.  In fact, we have never found such a violation in any case against a child welfare worker.[138]

The Fifth Circuit further held that, "In finding violations of clearly established law when a teacher or police officer played a role in the removal of a child, we

---

[135] 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671).

[136] 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671).

[137] *Id.* at 520.

[138] *Id.* (citing *Kiser v. Garrett*, 67 F.3d 1166, 1173 (5th Cir. 1995); *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988) (both rejecting liability for social workers involved in the temporary removal of children when there was an ongoing investigation); *Hall v. Dixon*, Civ. A. No. H-09-2611, 2010 WL 3909515 (S.D. Tex. Sept. 30, 2010) (observing that the Fifth Circuit "has found violations of clearly established law only when state employees who are not social workers have acted to separate children from their families without evidence of harm to the child")).

distinguished their relatively smaller role in 'ferret[ing] out possible instances of abuse' from that of child welfare officials for whom that is the paramount concern."[139]

Like the Fifth Circuit in *Romero*, the Court finds that the facts of this case place it squarely within the "nebulous" zone of the substantive due process continuum.  Although Plaintiffs describe the sexual abuse allegations as "stale" because the abuse allegedly occurred two years prior to A.M. reporting it on September 25, 2018,[140] the Court finds that the State's interest in preventing a father from sexually abusing his child was strong in this case.  According to the Petition, A.M. had alleged that the sexual abuse involved several different acts and had occurred over multiple days.[141]  As explained by our sister court, "*it is a primary part of a child care worker's job* to investigate abuse."[142]  Additionally, although A.M. did not allege that the sexual abuse was ongoing at the time she reported it, Defendants could not be sure whether Mr. Mitchell would potentially resume the alleged sexual abuse of A.M., if her sibling, C.M., had been or might be subject to sexual abuse, or if he would begin abusing both children in response to A.M's disclosure.  Because the State's interest in protecting the minor children overlapped with Plaintiffs' privacy interest, the right to family integrity is too nebulous to find a clearly established violation.[143]

---

[139] *Romero*, 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671 (denying qualified immunity to teacher who reported alleged abuse)); *See also, Wooley v. Baton Rouge*, 211 F.3d 913, 924 (5th Cir. 2000) (denying qualified immunity to police officers who removed a child without a court order).
[140] R. Doc. 14 at pp. 14, 18, 20.
[141] R. Doc. 1-5 at ¶ 11.
[142] *Schannette v. Doxey*, Civ. A. No. 2:12-CV-01416, 2013 WL 4516041, at *8 (W.D. La. Aug. 22, 2013) (emphasis in original).
[143] *Romero*, 937 F.3d at 520 (quoting *Morris*, 181 F.3d at 671).

To the extent Plaintiffs assert that Gilbert, Trosclair and Bordelon failed to properly consider or weigh the alleged exculpatory text messages, such allegations also fail to show the violation of a clearly established constitutional right. The Fifth Circuit has repeatedly held that allegations of misconduct do not transform the nebulous right to family integrity into a clearly established right.[144] Likewise, "[D]istrict courts in this circuit have consistently held that misrepresenting or deliberately withholding evidence during a child services investigation does not defeat qualified immunity."[145] Plaintiffs' allegations, even if taken as true, do not rise to the level of misconduct or misrepresentations by Defendants. Plaintiffs merely disagree as to the weight given by Defendants to the alleged exculpatory text messages. Under the foregoing Fifth Circuit authority, Plaintiffs' allegations regarding the weight given by DCFS to the text messages do not transform the nebulous right to family integrity into a clearly established right.

The Court further finds that there is no indication from the Petition or the parties' briefing that Gilbert, Bordelon and Trosclair sought to permanently sever the

---

[144] *Kiser v. Garrett*, 67 F.3d 1166, 1172 (5th Cir. 1995) (citing *Doe v. State of La.*, 2 F.3d 1412, 1417-18 (5th Cir. 1993)).

[145] *Darian v. Cashe*, Civ. A. No. 17-52-JJB-EWD, 2017 WL 3326976, at *13 (M.D. La. July 14, 2017) (quoting *Day v. Louisiana*, Civ. A. No. 2:12-CV-02844, 2013 WL 3894025, at *6 n.32 (W.D. La. July 25, 2013)) (internal quotation marks omitted). *See, Schannette*, Civ. A. No. 2:12-CV-0146, 2013 WL 4516041 at *8 ("[B]ecause of the binding precedent *Hodorowski, Doe* and *Kiser*, this court cannot rule that the plaintiffs have shown that the law was sufficiently clear so that reasonable social workers such as the DCFS defendants would have known that they violated the plaintiffs' rights by temporarily taking the children into custody, pending a child abuse investigation, and making reports of abuse."); *Foley v. Texas Dept. of Family & Protective Servs.*, Civ. A. No. 1:12-CV-270, 2012 WL 6803598 (E.D. Tex. Nov. 14, 2012) (finding that qualified immunity protects a child services case worker who withheld evidence that would have cast doubt on the parents' wrongdoings); *Young v. Office of Child Safety*, Civ. A. No. 11-1417-LC, 2012 WL 7017793 (W.D. La Dec. 14, 2012) (noting that a child services employee may be entitled to qualified immunity where she allegedly produced false statements and tampered with evidence; the court ultimately ruled in her favor on other grounds).

parent-child relationship between Mr. Mitchell and his minor children, A.M. and C.M., which would support a finding of a clearly established constitutional right.[146] In their Petition, Plaintiffs allege that on October 10, 2018, DCFS determined that A.M.'s allegations of sexual abuse were valid, which "resulted in the permanent removal of the children from the Father [sic] and Stepmother's [sic] loving home and placed them back into their Mother's [sic] custody in Texas."[147]  The Petition, however, contains no factual allegations to support this conclusory statement. Plaintiffs have not alleged that DCFS took any steps to alter the custody arrangement between Mr. Mitchell and Samantha Mitchell under the Order of Modification issued by the Texas state court in November 2016.[148]  Instead, Plaintiffs allege that the minor children were removed from their custody and placed into the custody of their mother, Samantha Mitchell, with whom Mr. Mitchell shares custody of the children.[149]

In their Opposition brief, Plaintiffs similarly assert that the children were "permanently separated" from Mr. Mitchell[150] and that, as of the date of the Opposition brief (November 8, 2019), the children remained in the custody of their mother in Texas.[151]  Again, Plaintiffs fail to offer any facts in support of this

---

[146] *See, Romero v. Brown*, 937 F.3d 514, 521 (5th Cir. 2019) (quoting *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988) ("Foundational family integrity cases 'involved the state's attempt to sever *permanently* the parent-child relationship.'")) (emphasis in original) (both rejecting liability for social workers involved in the temporary removal of children when there was an ongoing investigation); *Hall v. Dixon*, Civ. A. No. H-09-2611, 2010 WL 3909515 (S.D. Tex. Sept. 30, 2010) (observing that the Fifth Circuit "has found violations of clearly established law only when state employees who are not social workers have acted to separate children from their families without evidence of harm to the child")).

[147] R. Doc. 1-5.

[148] *See generally*, R. Doc. 1-5; R. Doc. 1-5 at ¶ 7.

[149] *Id.* at ¶¶ 7, 14.

[150] R. Doc. 14 at p. 1

[151] *Id.* at pp. 6 & 17.

conclusory statement. Plaintiffs have failed to cite, nor has the Court found, any legal authority suggesting that Defendants violated Mr. Mitchell's clearly established right to family integrity by removing the children from one parent and placing them in the custody of the other parent, pending an investigation into abuse allegations, when the parents share custody of the children. Notably, the children were not placed in state custody. Moreover, the Fifth Circuit has consistently held that a temporary removal of children from the custody of their parents is not sufficient to show a clearly established violation of substantive due process rights.[152] To the extent Plaintiffs complain that A.M. and C.M. remained in the custody of their mother at the time Plaintiffs filed their Opposition brief on November 8, 2019, approximately eight months after a Louisiana judge reversed DCFS' determination that the abuse allegations were valid, the Court is not persuaded that this fact demonstrates the violation of a clearly established constitutional right. As an initial matter, Plaintiffs offer no explanation for why the children remain in Ms. Mitchell's custody, or whether Plaintiffs consented to that arrangement. Additionally, Defendants suggest that the children have remained in Ms. Mitchell's custody at Mr. Mitchell's request.[153] Regardless of the reason, the Court finds the fact that the children remained in Ms.

---

[152] *Hodorowski v. Ray*, 844 F.2d 1210, 1217 (5th Cir. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 747-48, 102 S.Ct. 1388, 1392, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois*, 405 U.S. 645, 649, 92 S.Ct. 1208, 1211, 31 L.Ed.2d 551 (1972) ("[I]t would be a mistake to conclude that, from *Santosky* and *Stanley* alone, the appellants should have known that taking the Hodorowski children into temporary custody violated a constitutional right. Both cases, for example, involved the state's attempt to sever *permanently* the parent-child relationship. The present case, by contrast, concerns an attempt to obtain only *temporary* custody of the children. This difference alone is sufficient to prevent us from concluding that appellants' conduct violated clearly established law.") (emphasis in original).
[153] R. Doc. 19 at p. 3 (*citing* R. Doc. 14-1 at p. 164).

Mitchell's custody at the time of Plaintiffs' Opposition brief does not in itself lend support to Plaintiff's position.

Based on the foregoing, the Court further concludes that the binding Fifth Circuit precedent set in *Hodorowski*, *Doe*, *Kiser*, and *Romero* prevents this Court from concluding that Plaintiffs have shown that the law was sufficiently clear at the time of the alleged violation in 2018 that reasonable social workers, such as Gilbert, Troslair and Bordelon, would have known that they violated Plaintiffs' substantive due process rights by temporarily placing the children into the custody of their biological mother, who shared legal custody of the children, pending an investigation into child abuse allegations, which they subsequently determined were valid. Because Plaintiffs cannot establish that their substantive due process rights were clearly established at the time of the alleged violation, Gilbert, Troslair and Bordelon are entitled to qualified immunity as to Plaintiffs' individual capacity claims against them. Accordingly, the Court finds that Plaintiffs have not carried their burden of alleging facts that would overcome the pleading standard under Fed. R. Civ. P. 12(b)(6) or that would overcome Defendants' qualified immunity defense.

**D. Plaintiffs' Request for Leave to Amend their Petition.**

The Court has determined that Defendants are entitled to dismissal under Fed. R. Civ. P. 12(b)(6) of Plaintiffs' 42 U.S.C. § 1983 claims asserted against DCFS and Gilbert, Bordelon and Troslair, in their individual and official capacities. A dismissal of Plaintiffs' § 1983 claims would not dismiss the case entirely, however, as Plaintiffs have alleged state law claims, including negligence and loss of

consortium.[154]  In their Opposition brief, Plaintiffs have asked the Court for leave to amend their Petition if the Court determines that the allegations therein are insufficient to state a claim under Rule 12(b)(6).[155]

> The Fifth Circuit has recognized that:
>
> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.[156]

As explained by our sister court, "A court generally should provide a plaintiff an opportunity to amend her complaint before granting a motion to dismiss with prejudice."[157]  Although Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave when justice so requires,"[158] the Fifth Circuit has cautioned that, "leave to amend under Rule 15 is by no means automatic."[159]  "Whether to grant leave to amend a complaint is entrusted to the sound discretion of the district court."[160]  In determining whether to grant leave, a court may consider several factors, including, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

---

[154] *See,* R. Doc. 1-5 at ¶¶ 16, 19, 20, 26 & 27.

[155] R. Doc. 14 at p. 24.

[156] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

[157] *In re Winstead*, 605 B.R. 432, 443 (Bankr. S.D. Miss. 2019) (citing *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000)).

[158] Fed. R. Civ. P. 15(a)(2).

[159] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003).

[160] *Simmons v. Sabine River Auth. Louisiana*, 732 F.3d 469, 478 (5th Cir. 2013) (citations and internal quotation marks omitted).

undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . ."[161]

Neither party addressed these factors in their briefing. Plaintiffs merely request leave to amend their Petition if the Court determines the allegations contained therein fail to state a claim.[162] The Fifth Circuit has held that Rule 15(a) applies to express requests to amend a pleading, and that, "A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought."[163] The Fifth Circuit further clarified that, "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)."[164] As the Fifth Circuit pointed out in *Goldstein v. MCI WorldCom*, tacking on a general curative amendment request to the end of an opposition brief filed in response to a motion to dismiss, almost as an afterthought, after making no effort to address the deficiencies exposed by the motion to dismiss is insufficient to justify amendment of the pleadings.[165]

---

[161] *Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962)).
[162] R. Doc. 14 at pp. 24-25.
[163] *U.S. ex rel. Willard v. Human Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (*citing* Fed. R. Civ. P. 7(b)(1), 15(a); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445-46 (9th Cir. 1990)).
[164] *Willard*, 336 F.3d at 387 (quoting *Confederal Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).
[165] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254-55 (5th Cir. 2003). *See, Grambling University National Alumni Ass'n v. Bd. Of Supervisors for the University of Louisiana System*, Civ. A. No. 06-1571, 2007 WL 2088299, at *5 (W.D. La. July 19, 2007) (citing *Goldstein*, 340 F.3d at 254).

The Court finds *Goldstein* persuasive, as Plaintiffs' request to amend their Petition is included in five sentences in the last paragraph of a 25-page Opposition brief.[166]   Here, as in *Goldstein*, Plaintiffs were certainly aware of Defendants' objections to their Petition when Defendants filed the instant Motion to Dismiss on October 1, 2019.[167]   Despite this awareness, however, Plaintiffs have not demonstrated to the Court how they would replead their claims if given the opportunity and did not suggest in their Opposition brief any additional facts not initially pled that could, if necessary, cure the pleading defects raised by Defendants.[168] The Court can only surmise that, if allowed to amend their Petition, Plaintiffs would assert entirely new claims based upon the First, Fourth and Fourteenth Amendment violations asserted by Plaintiffs for the first time in their Opposition brief.[169] The Court notes that this is speculative because Plaintiffs have failed to set forth with particularity the grounds for the amendment.   In fact, Plaintiffs have not stated any grounds at all for a potential amendment.   Such an amendment would significantly prejudice Defendants and cause undue delay, as Defendants would be forced to defend against claims not included in the original

---

[166] R. Doc. 14 at p. 24.

[167] *See,* R. Doc. 10; *Goldstein*, 340 F.3d at 254.

[168] *Id.* at 254-55 (citing *McKinney v. Irving Indep. School Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (finding no abuse of discretion in the district court's denial of leave to amend where the plaintiffs failed to file an amended complaint as a matter of right or submit a proposed amended complaint in a request for leave of the court and the plaintiffs failed to alert the court as to the substance of any proposed amendment.)).

[169] *See*, R. Doc. 14 at p. 7 ("Plaintiffs contend that the foregoing acts by defendants constitute violations of Plaintiffs' Fourteenth Amendment Due Process rights, Fourth Amendment right to be free from illegal seizure and their First Amendment right to familial association.").   *See also, Id.* at p. 19 ("By not following the law as it pertains to the required process for removal of children from the care of their parents, DCFS violated the Mitchell's Fourth Amendment rights by improperly seizing the children and did not provide the Mitchells with the due process they are entitled to under the Fourteenth Amendment and thereby violated the Mitchells' right to family integrity.").

Petition, which was filed almost a year and a half ago. The Court notes that, when Plaintiffs filed their Opposition brief on November 8, 2019, the Court had not yet issued a scheduling order setting a deadline for the parties to amend their pleadings. It is evident to the Court that Plaintiffs were aware of the deficiencies in their Petition because they raised new arguments and grounds for relief in their Opposition brief. Plaintiffs could have moved for leave to amend between the time Defendants filed the instant Motion on October 1, 2019, and the time Plaintiffs filed their Opposition brief on November 8, 2019, but chose not to do so.

The Court did not issue a Scheduling Order until approximately one month later, on December 12, 2019, which then set a deadline of January 10, 2020 for amended pleadings.[170] Thus, Plaintiffs had an additional month, until January 2020, to seek leave to amend their Petition, and again chose instead to wait for a ruling from this Court regarding the sufficiency of its Petition. Plaintiffs offer no explanation for their failure to seek leave to amend their Petition between October 1, 2019 and January 10, 2020, or for their failure to do so in the year that has elapsed since the filing of Defendants' Motion to Dismiss. As explained by our sister court, this kind of "wait and see" approach to requesting leave to amend, which hinges on a request to amend that is seemingly an afterthought, places this Court in a position of instructing Plaintiffs on how to confect cognizable claims if the Court chooses to allow the amendment.[171] To the extent Plaintiffs want this Court to advise them regarding

---

[170] R. Doc. 26 at p. 1.
[171] *Grambling University National Alumni Ass'n v. Bd. Of Supervisors for the University of Louisiana System*, Civ. A. No. 06-1571, 2007 WL 2088299, at *5 (W.D. La. July 19, 2007) (citing *Goldstein*, 340 F.3d at 254).

whether the Petition is sufficient before taking any action on their own, the Court declines Plaintiffs' invitation to take such a role in this case. As noted by the Fifth Circuit, "[A] district court's responsibilities do not include instructing ostensibly sophisticated . . . counsel how to plead an actionable complaint . . . ."[172] The Court finds that this factor, undue delay, weighs against allowing amendment at this late date.

The Court further finds that allowing Plaintiffs to amend their Petition places an undue burden on Defendants because it permits the continuation of this suit without proper notice to Defendants as to the specific allegations to which Defendants must answer.[173] Granting Plaintiffs' request would also cause undue delay in this case because Defendants will be forced to wait for a newly filed amended pleading, and may then be forced to spend additional time and money on another motion to dismiss, despite the fact that the Court has concluded that the instant Motion to Dismiss has merit. This factor, too, weighs against allowing an amendment at this late date. Thus, while this is Plaintiffs' first request for leave to amend their Petition, if the language included in the Opposition brief is construed as such, Plaintiffs have failed to provide any reason for their failure to move to amend during the pendency of this case. Accordingly, the Court denies Plaintiffs' request for leave to amend their Petition. However, to the extent that the Petition contains claims brought under

---

[172] *Goldstein v. MCI WorldCom*, 340 F.3d 238, 255 n.6 (5th Cir. 2003) (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).
[173] *Grambling*, Civ. A. No. 06-1571, 2008 WL 2088299 at *5.

Louisiana law, including negligence and loss of consortium, the case shall be remanded back to state court for further proceeding.

## IV.   CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the Motion to Dismiss[174] is **GRANTED** and Plaintiffs' claims against Defendants, brought pursuant to 42 U.S.C. § 1983, are **DISMISSED WITH PREJUDICE.   IT IS FURTHER ORDERED** that Plaintiffs' remaining state law claims asserted against Defendants are **REMANDED** to the Twenty-Second Judicial District Court for the Parish of St. Tammany, Louisiana.

New Orleans, Louisiana, November 13, 2020.

**WENDY B. VITTER**
**United States District Judge**

---

[174] R. Doc. 10.